**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **Orell Logan,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:22cv459 (LMB/JFA)** |
| | ) | |
| **Ronald Angelone, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION

This matter is before the Court upon a Motion to Dismiss [Dkt. No. 27] filed by defendants Ronald Angelone, Harold W. Clarke, James E. Parks, Adrianne L. Bennett, Tonya D. Chapman, Linda L. Bryant, A. Lincoln James, Sherman P. Lea Sr., Kemba S. Pradia, and Gary Bass (collectively, "defendants") in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner Orell Logan ("plaintiff" or "Logan"). Logan, who is proceeding pro se, alleges that defendants and the Virginia Department of Corrections violated his rights in several ways: first, by determining in 1993 that he was ineligible for discretionary parole; second, by denying him "full and fair" consideration for parole after his eligibility for parole was restored in 2018; and third, by imposing a de facto abolition of discretionary parole for offenders convicted of violent crimes. [Dkt. No. 1]. Defendants argue in their Motion to Dismiss, which was accompanied by a proper Roseboro[1] notice, [Dkt. No. 29], that plaintiff's claims are either time-barred or fail to state a viable claim for relief, positions plaintiff opposes. [Dkt. No. 35].[2] For

---

[1] See Roseboro v. Garrison, 528 U.S. 309 (4th Cir. 1975).

[2] Plaintiff timely filed an opposition to defendants' Motion to Dismiss. Later, after the deadline to file an opposition had passed, plaintiff filed two additional documents in apparent opposition of defendants' arguments—one entitled "Motion to Add Additional Arguments, and Supporting Document to the Originally Filed Response in Opposition to Defendants' Motion to Dismiss"

the reasons that follow, defendants' Motion to Dismiss will be granted, and this action will be dismissed.

I.

The following statement of the facts is comprised of the factual allegations set out in the Complaint, supplemented by facts and information subject to judicial notice and information contained in documents plaintiff refered to in his pleadings or submitted as exhibits.

Before 1995, the Commonwealth of Virginia employed a discretionary parole system—that is, a system in which a board was responsible for determining whether and when an offender would be released on parole. See Burnette v. Fahey, 687 F.3d 171, 175 (4th Cir. 2012). On January 1, 1995, pursuant to legislation previously passed by the Virginia General Assembly, the Commonwealth's discretionary parole system was abolished. Id.; Va. Code § 53.1-165.1. This legislation operated only prospectively; it did not terminate the discretionary parole system for offenders who were convicted before 1995. Id.

---

[Dkt. No. 37] and another entitled "Motion to Strike Down Defendants' Motion to Dismiss" [Dkt. No. 38]. These documents, which are rambling and at times difficult to comprehend, are improper for two reasons. First, they are unauthorized sur-replies—i.e., additional replies to a motion that has already been fully briefed. Unauthorized sur-replies are prohibited by the Local Rules. See E.D. Va. Loc. Civ. R. 7(F)(1) ("No further briefs or written communications may be filed without first obtaining leave of Court."). Second, these documents attempt to raise new bases for relief that are not included in the Complaint, such as allegations related to a 2022 decision to deny plaintiff parole and the conditions of plaintiff's confinement. See [Dkt. No. 37-1] at 4, 12. This is impermissible. See Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint"), aff'd, 141 F.3d 1162 (4th Cir. 1998). For these reasons, the Court has not considered these documents while assessing the Motion to Dismiss.

On February 12, 1993, plaintiff began serving a life sentence after being convicted of at least four counts of robbery in at least two state circuit courts.[3] [Dkt. No. 1-1] at 31-32. Upon plaintiff's admission into the Virginia Department of Corrections ("VDOC") system, officials conducted a review of plaintiff's criminal record pursuant to Va. Code § 53.1-151(B1) [4] and determined that he was ineligible even to be considered for discretionary parole. [Dkt. No. 1] at ¶¶ 15, 20-23. Plaintiff learned of his ineligibility for parole by, at the latest, a "Legal Update" dated June 23, 2006. [Dkt. No. 1-1] at 30.[5]

On January 31, 2018, the Virginia Parole Board restored plaintiff's parole eligibility. [Dkt. No. 1] at ¶ 27. Plaintiff learned of this decision via a "Legal Update" on February 12, 2018. Id. at ¶ 28; [Dkt. No. 1-1] at 31-32. Since that time, the Virginia Parole Board has considered plaintiff for discretionary parole on four occasions—in 2018, 2019, 2020, and 2021. [Dkt. No. 1-1] at 16-17, 18-19, 20-21, 25-26. On each occasion, the Parole Board decided not to grant plaintiff parole, citing a variety of factors. Id. Specifically, in 2018, the Board stated:

- You need further participation in institutional work and/or educational programs to indicate your positive progression towards re-entry into society.

- You need to show a longer period of stable adjustment.

---

[3] The "Legal Update" document which includes this information shows that plaintiff was ultimately convicted of five counts of robbery but was sentenced for one of those counts *after* he entered the custody of the state. Two of the five sentences were entered in the Chesterfield Circuit Court, two more were entered in the Colonial Heights Circuit Court, and the final sentence was entered in the Henrico Circuit Court. [Dkt. No. 1-1] at 31-32.

[4] This statute provides that "[a]ny person convicted of three separate offenses of (i) murder, (ii) rape or (iii) robbery by the presenting of firearms of other deadly weapon, or any combination of the offenses specified in subdivisions (i), (ii) or (iii) when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole." Va. Code § 53.1-151(B1).

[5] Plaintiff concedes in his Opposition to the Motion to Dismiss: "I became aware that I had been put under the strike 3 law in the year 2006." [Dkt. No. 35] at 7.

- Extensive criminal record

- Considering your offense and your institutional records, the Board concludes that you should serve more of your sentence before being paroled.

- Your prior failure(s) and/or convictions while under community supervision indicate that you are unlikely to comply with conditions of release.

- Your record of institutional infractions indicates a disregard for rules and that you are not ready to conform to society.

- History of substance abuse.

[Dkt. No. 1-1] at 16-17.

In 2019, the Board stated:

- Considering your offense and your institutional records, the Board concludes that you should serve more of your sentence before being paroled.

- Serious nature of your offense(s).

- You need to show a longer period of stable adjustment.

- History of violence.

- History of substance abuse.

- Crimes committed

- The Board considers you to be a risk to the community.

[Dkt. No. 1-1] at 18-19.

In 2020, the Board cited the following reasons:

- Serious nature and circumstance(s) of your offense(s).

- You need to show a longer period of stable adjustment.

- The Board concludes that you should serve more of your sentence prior to release on parole.

- Crimes committed

[Dkt. No. 1-1] at 20-21.

On July 1, 2020, plaintiff requested reconsideration of the Board's 2020 decision denying him parole. Id. at 22-23. In his request, he challenged the 1993 determination that he was ineligible for parole and the Board's stated reasons for denying him parole in 2020. Id. at 22-24. The Board's reasons, plaintiff argued, were "beyond [his] control" and could not be "changed or argued." Id. at 23. On October 5, 2020, the Parole Board denied plaintiff's request for reconsideration, finding that plaintiff failed to offer "significant new information," that plaintiff's argument "[did] not affect the reason(s) [he was] not granted parole," and because plaintiff's argument "[did] not show significant error in information of application of policies or procedures." Id. at 24.

In 2021, the Board again denied plaintiff parole, citing the following reasons:

- Extensive criminal record
- Your prior failure(s) and/or convictions while under community supervision indicate that you are unlikely to comply with conditions of release.
- The Board concludes that you should serve more of your sentence prior to release on parole.
- Serious nature and circumstance(s) of your offense(s).

[Dkt. No. 1-1] at 25-26.

**II.**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider the sufficiency of a complaint, not to resolve contests surrounding facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To do so, the complaint must allege specific facts in support of each element of each claim it raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. Id.

Although a court considering a Rule 12(b)(6) motion is tasked with determining the adequacy of the complaint itself, the reviewing court "may [also] consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed." Stoney Glen, LLC v. S. Bank & Tr. Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013); see also Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006).

## III.

The Complaint is at points difficult to understand and does not always clearly identify the legal claims for which plaintiff seeks relief. Having assessed both the Complaint and the Motion to Dismiss, the Court concludes that the Complaint appears to allege claims related to plaintiff's 1993 parole ineligibility determination, the adequacy of the Parole Board's proffered reasons for denying plaintiff parole following the restoration of his parole eligibility in 2018, and an alleged de facto bar to parole for inmates like plaintiff. [Dkt. No. 1]. For the reasons explained below, the Complaint fails to state any claim upon which relief may be granted and therefore will be dismissed.

### A. Parole Ineligibility Determination in 1993

Plaintiff first argues that officials incorrectly determined in 1993 that Va. Code § 53.1-151(B1), which made inmates who committed particular offenses ineligible for parole, applied

to him. [Dkt. No. 1] at ¶¶ 28-35, 38-39. According to plaintiff, this inaccurate determination cost plaintiff many years' worth of opportunities to be considered for discretionary parole in violation of his rights under the Eighth and Fourteenth Amendments. Id.

Defendants assert that any claims related to plaintiff's 1993 parole eligibility determination are barred by the relevant statute of limitations. [Dkt. No. 28] at 5-7. Although a district court typically cannot resolve the merits of an affirmative defense like a statute of limitations defense at the motion to dismiss stage, in "rare circumstances," a complaint and its exhibits may provide sufficient facts for a court to rule on a statute of limitations question raised in a Rule 12(b)(6) motion. See Ott v. Md. Dep't of Pub. Safety & Corr. Servs., 909 F.3d 655, 658 (4th Cir. 2018) ("A court may dismiss a complaint on statute of limitations grounds if the time bar is apparent on the face of the complaint.") (internal quotation omitted).

Here, the Complaint and its exhibits make clear that plaintiff's claims related to his initial parole ineligibility determination are time-barred. A § 1983 claim based on events that occurred in Virginia is subject to Virginia's statute of limitations for general personal injury claims, see Owens v. Okure, 488 U.S. 235, 239-40 (1989), which requires an action to be brought within two years of its accrual, see Va. Code § 8.01-243(A). Federal law holds that "[a] civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (internal quotation marks and citation omitted).

Accepting the Complaint's allegations as true, the latest possible date plaintiff learned of his parole ineligibility was June 23, 2006. [Dkt. No. 1-1] at 30; [Dkt. No. 35] at 7. Accordingly, plaintiff's claim accrued no later than that date, meaning that the two-year statute of limitations began to run on that date and any lawsuit related to his parole ineligibility determination was

required to have been filed by June 23, 2008 to be timely. This action was filed in April 2022, [Dkt. No. 1], roughly fourteen years after the statute of limitations expired.

In his Opposition to the Motion to Dismiss, plaintiff appears to argue that he is entitled to equitable tolling of the statute of limitations. Specifically, he argues that "the weight of [the parole ineligibility determination] shattered both the remainder of [his] hope and what was left of [his] mind," [Dkt. No. 35] at 7, and that, upon learning of his ineligibility, he "went into a state of very deep depression," only having "periodic[] moments of clarity around 2009 or 2010," id. at 15. Consequently, plaintiff states, he was not able to file legal challenges to his parole eligibility determination for several years. Id.

There is no merit to this argument. Equitable tolling is "reserved for 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016) (quotation omitted). The Supreme Court has explained that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Holland v. Florida, 560 U.S. 631, 653 (2010). "Mental incapacity or disability, in appropriate circumstances, can rise to the level necessary to trigger equitable tolling," see Robison v. Hinkle, 610 F. Supp. 2d 533, 535 (E.D. Va. 2009), but even if the Court were to accept that the statute of limitations in this action should be tolled for the "3-5 years" plaintiff suffered depression and sat in "long term segregation," [Dkt. No. 35] at 15, it would be unreasonable to conclude that plaintiff was "pursuing his rights diligently" such that it would be appropriate to toll the statute of limitations for fourteen years. See Pace, 544 U.S. at 418. Indeed, by waiting to file this

lawsuit for an additional ten to twelve years after his mental health improved, plaintiff clearly failed to act diligently. Consequently, plaintiff is not entitled to equitable tolling and the claims related to his initial parole ineligibility determination are time-barred.

**B. Denials of Discretionary Parole in 2018 to 2021**

Plaintiff next asserts that, since the restoration of his eligibility for parole, the Virginia Parole Board has not given him "fair and meaningful consideration for parole" and has failed to provide "clear indicators of what [he] could do to change … the Parole Board's decision." [Dkt. No. 1] at ¶¶ 33, 37. Plaintiff argues that these alleged wrongs constituted a violation of his rights under the Fourteenth Amendment and appears to assert that these acts also violated his rights under the Eighth Amendment. Id. at ¶¶ 29, 39. The Complaint does not state a viable claim under either source of law.

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. § XIV, § 1. Thus, in analyzing an inmate's due process claim, a court must consider whether, and to what extent, the plaintiff has identified a protectable interest under the Fourteenth Amendment. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). If a complaint successfully identifies a protectable interest, a reviewing court must determine whether the state afforded the plaintiff the minimum procedural protections required by the Fourteenth Amendment in depriving him of this interest. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Slezak, 21 F.3d at 593.

"A liberty interest may arise from the Constitution itself" or "from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Although prisoners have no constitutional right to release before the expiration of a lawful

sentence, see Greenholtz, 442 U.S. at 7, Virginia state law has created a limited liberty interest in an inmate's consideration for parole eligibility, see Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). The Fourth Circuit has been clear, though, that the level of procedural protection owed to a state prisoner being considered for parole is "minimal" because there are few "context[s] more deserving of federal deference than state parole decisions." Id. (citing Vann v. Angelone, 73 F.3d at 519, 522 (4th Cir. 1996)). The Fourth Circuit has held that all that is owed to an inmate being considered for parole is "an opportunity to be heard and a statement of reasons indicating ... why parole has been denied." Bowling v. Va. Dep't of Corrs., 920 F.3d 192, 200 (4th Cir. 2019) (quoting Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir. 1986)).

Here, the Complaint acknowledges that plaintiff has received opportunities to be heard and statements of the reasons he was denied parole. [Dkt. No. 1-1] at 1 (indicating plaintiff had been scheduled for a parole interview); id. at 16-17, 18-19, 20-21, 25-26 (listing reasons for plaintiff's parole denial in 2018, 2019, 2020, and 2021). Consequently, it is clear from the Complaint that plaintiff has been provided all of the process he was due each time he has been considered for parole since 2018. And his concern that the Parole Board has failed to explain to him what he could do to change its decision does not support any legal claim. Cf. Hoskin v. Brown, No. 1:14cv759, 2015 WL 5247595, at *5 (E.D. Va. Sept. 8, 2015) (finding that the Parole Board's identification of the "serious nature and circumstances of offense" and the "risk to the community" plaintiff posed satisfied due process and observing that "there is no constitutional requirement for the [Board] to provide plaintiff with advice on how to overcome the obstacles of parole review").

Moreover, the Parole Board's denial of plaintiff's parole applications did not violate his rights under the Eighth Amendment. The Eighth Amendment's Cruel and Unusual Punishment

Clause prohibits punishment that is grossly disproportionate to the severity of the crime committed, see generally Harmelin v. Michigan, 501 U.S. 957 (1991); however, the denial of parole does not itself constitute imposition of a sentence or punishment, see Morrissey v. Brewer, 408 U.S. 471, 480 (1972); Lustgarden v. Gunter, 966 F.2d 552, 555 (10th Cir. 1992) ("Denial of parole under a statute dictating discretion in parole determination does not constitute cruel and unusual punishment."). Consequently, defendants have not imposed punishment on plaintiff, much less punishment that is grossly disproportionate to the crimes he committed. The Complaint therefore fails to state a claim upon which relief can be granted under the Eighth Amendment.

**C. Consideration of the Nature of Plaintiff's Offenses**

Plaintiff's final claim is difficult to parse. He seems to argue that, regardless of the specific level of process he received in being considered for release on parole, the Virginia Parole Board has imposed a "de facto abolition of parole" for inmates like him, namely inmates convicted of violent crimes occurring before January 1, 1995. [Dkt. No. 1] at ¶¶ 30-32. Without alleging any supportive facts, the Complaint alleges that "the Parole Boards [sic] treatment of parole-eligible inmates as the plaintiff convicted of violent offenses has amounted to a de facto abolition of parole, violating not only due process but also ex post facto provisions of the U.S. Constitution" and "caused him to serve far longer sentences than ... contemplated by the law at the time his sentences were handed down." Id. at ¶ 31-32.

The appellants in Burnette v. Fahey, 687 F.3d 171 (4th Cir. 2012), raised similar due process and ex post facto arguments, both of which were rejected by the Fourth Circuit. For their due process claim, the appellants in Burnette asserted that Parole Board members had "failed to consider them for parole in a fair and meaningful manner" by neglecting to "determine

whether [they were] suitable for parole through an individual analysis of the factors identified in the [Parole Board] Policy Manual." Burnette, 687 F.3d at 182. The Fourth Circuit affirmed the district court's finding that appellants had failed to state a viable claim because the complaint did not provide factual allegations to support the notion that they had not truly received individualized consideration. Id. at 183. Observing that "[e]ach of the inmates was convicted of a very serious crime or crimes, for which he or she received a lengthy sentence," the Fourth Circuit concluded that

> "[i]t would be well within the Board's discretion to consider such a prisoner holistically and nevertheless [ ] determine that he or she has not served a sufficiently lengthy sentence in light of the grave crime. . . . the factual allegations do not demonstrate that the Board has replaced this type of individual consideration with a de facto rule rejecting violent offenders. Simply put, the Board's declination to grant parole to the Inmates—even repeatedly—based on the seriousness of their offenses cannot show that it has failed to consider other factors."

Id.

The same is true here: plaintiff was convicted of several serious crimes and was sentenced to spend life in prison. Each time the Parole Board denied plaintiff parole, it cited the seriousness of his acts along with other factors. The Complaint does not provide any substantive factual allegations to suggest that the Parole Board did not consider plaintiff holistically or that it has instituted a de facto abolition of discretionary parole for inmates convicted of violent crimes. Instead, the Complaint contains only speculative and conclusory statements in support of that proposition. In this respect, plaintiff's Complaint, like the appellants' complaint in Burnette, fails to support any viable due process claim.

The appellants' argument in Burnette that "the Board [had] effected an ex post facto enhancement of the punishment for their crimes" fared no better than their due process claim. Id. at 184. In support of their ex post facto argument, the appellants again relied on their allegation

that the parole board had adopted a de facto bar against parole for inmates convicted of violent crimes. The Fourth Circuit found that the allegations supported an inference that the Parole Board had decided to "tak[e] a stricter view towards violent offenders than it had in the past," but those allegations did not indicate that the Parole Board had adopted an absolute bar in place of individualized considerations in which it exercised its discretion. Id. at 185. The Board's decision to "get tougher" on certain crimes, did not amount to an ex post facto violation because the Board was vested with the authority to exercise its discretion to get tougher. Id. Plaintiff's Complaint resembles appellants' complaint in Burnette by failing to allege facts that indicate the Virginia Parole Board has not conducted an individualized review of his suitability for parole or that it has done anything other than use its discretion to determine how it would weigh the seriousness of plaintiff's crime when evaluating whether to grant him parole. As the Fourth Circuit clearly stated, "[w]e should not and will not micromanage state parole systems through the Ex Post Facto Clause. . . . In the instant action, the Inmates have alleged facts indicating only that, in exercising its discretion, the Board has opted to adopt a harsher tack with respect to violent offenders. This is not actionable." Id at 185-186 (internal quotations and citations omitted).

**IV.**

For the reasons stated above, defendants' Motion to Dismiss will be granted through an Order that will accompany this Memorandum Opinion. Because the Complaint fails to state any viable claim, plaintiff's Motion for Injunctive Relief and Motion for Summary Judgment will be denied. Cf. McDaniels v. Richland Cnty. Pub. Defender's Office, No. 1:12-6-TLW-SVH, 2012 WL 1565611, at *2 (D.S.C. Mar. 27, 2012) (observing that, because the complaint failed to state any cognizable claim, the plaintiff could not "show that he [was] likely to succeed on the merits"

and thus "failed to establish one of the required elements" to receive injunctive relief); Sharrock v. Fayetteville Met. Housing Auth., No. 5:14-cv-871-BO, 2015 WL 6159021, at *5 (E.D.N.C. Oct. 19, 2015) ("[B]ecause the Court has held either that it lacks jurisdiction or that plaintiff's complaint fails to state a claim under which relief can be granted, plaintiff's motion for summary judgment is denied.").

Entered this 11th day of January 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge